UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN DRUSKINIS,

            Plaintiff,

vs.

                                          Case No. 2:23-cv-13046
                                          Hon. Susan K. DeClercq

STOPANTISEMITISM.ORG AND
LIORA REZNICHENKO,

               Defendants.

_____/

Brian D. Wassom (P50381)          Andrew M. Pauwels (P79167)
Charles C. Kadado (P86279)        Jalen R. Farmer (P86859)
Warner Norcross + Judd LLP        Honigman LLP
12900 Hall Road, Suite 200        2290 First National Building
Sterling Heights, MI 48313        660 Woodward Avenue
(586) 303-4100                    Detroit, MI 48226-3506
bwassom@wnj.com                   (313) 465-7290
ckadado@wnj.com                   apauwels@honigman.com
                                  jfarmer@honigman.com


*Attorneys for Plaintiff*         Michael J. Grygiel
                                  Greenberg Traurig, LLP
                                  54 State Street, 6th Floor
                                  Albany, NY 12207
                                  (518) 689-1400
                                  grygielm@gtlaw.com

                                  Scott J. Bornstein
                                  Greenberg Traurig, LLP
                                  One Vanderbilt Avenue
                                  New York, NY 10017
                                  (212) 801-9200
                                  scott.bornstein@gtlaw.com

Bradford D. Kaufman
Greenberg Traurig, P.A.
777 South Flagler Drive
Suite 300 East
West Palm Beach, FL 33401
(561) 650-7900
kaufmanb@gtlaw.com

Zachary Needell
Greenberg Traurig, P.A.
401 East Las Olas Boulevard
Suite 2000
Fort Lauderdale, FL 33301
(954) 765-0500
Zachary.Needell@gtlaw.com

*Attorneys Pro Bono Publico for Defendants*

## DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(2) AND 12(B)(6)

For the reasons set forth in the attached brief, Defendants StopAntisemitism[1] and Liora Reznichenko (together, "Defendants"), by and through their attorneys Honigman LLP and Greenberg Traurig, LLP and P.A., hereby move this Court pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6) for an order dismissing all claims against Defendants in Plaintiff's First Amended Complaint (ECF No. 19) in their entirety and with prejudice.

---

[1] Plaintiff misnames Defendant StopAntisemitsm as StopAntisemitism.org. Defendants use the proper entity name throughout this Motion and Brief.

Pursuant to Local Rule 7.1, on April 18, 2024, counsel for Defendants contacted Plaintiff's counsel requesting concurrence in the relief requested in this Motion, and concurrence has not been reached.

Dated: April 22, 2024                     Respectfully submitted,

By: /s/ Andrew M. Pauwels                 Scott J. Bornstein
Andrew M. Pauwels (P79167)                Greenberg Traurig, LLP
Jalen R. Farmer (P86859)                  One Vanderbilt Avenue
Honigman LLP                              New York, NY 10017
2290 First National Building              (212) 801-9200
660 Woodward Avenue                       scott.bornstein@gtlaw.com
Detroit, MI 48226-3506
(313) 465-7290                            Bradford D. Kaufman
apauwels@honigman.com                     Greenberg Traurig, P.A.
jfarmer@honigman.com                      777 South Flagler Drive
                                          Suite 300 East
Michael J. Grygiel                        West Palm Beach, FL 33401
Greenberg Traurig, LLP                    (561) 650-7900
54 State Street, 6th Floor                kaufmanb@gtlaw.com
Albany, NY 12207
(518) 689-1400                            Zachary Needell
grygielm@gtlaw.com                        Greenberg Traurig, P.A.
                                          401 East Las Olas Boulevard
                                          Suite 2000
*Attorneys Pro Bono Publico for*          Fort Lauderdale, FL 33301
*Defendants*                              (954) 765-0500
                                          Zachary.Needell@gtlaw.com

2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN DRUSKINIS,

                Plaintiff,

vs.

STOPANTISEMITISM.ORG AND
LIORA REZNICHENKO,

                Defendants.

Case No. 2:23-cv-13046
Hon. Susan K. DeClercq

_____/

| | |
|---|---|
| Brian D. Wassom (P50381) | Andrew M. Pauwels (P79167) |
| Charles C. Kadado (P86279) | Jalen R. Farmer (P86859) |
| Warner Norcross + Judd LLP | Honigman LLP |
| 12900 Hall Road, Suite 200 | 2290 First National Building |
| Sterling Heights, MI 48313 | 660 Woodward Avenue |
| (586) 303-4100 | Detroit, MI 48226-3506 |
| bwassom@wnj.com | (313) 465-7000 |
| ckadado@wnj.com | apauwels@honigman.com |
| | jfarmer@honigman.com |
| *Attorneys for Plaintiff* | |
| | Michael J. Grygiel |
| | Greenberg Traurig, LLP |
| | 54 State Street, 6th Floor |
| | Albany, NY 12207 |
| | (518) 689-1400 |
| | grygielm@gtlaw.com |
| | |
| | Scott J. Bornstein |
| | Greenberg Traurig, LLP |
| | One Vanderbilt Avenue |
| | New York, NY 10017 |
| | (212) 801-9200 |
| | Scott.Bornstein@gtlaw.com |

Bradford D. Kaufman
Greenberg Traurig, P.A.
777 South Flagler Drive
Suite 300 East
West Palm Beach, FL 33401
(561) 650-7900
kaufmanb@gtlaw.com

Zachary Needell
Greenberg Traurig, P.A.
401 East Las Olas Boulevard
Suite 2000
Fort Lauderdale, FL 33301
(954) 765-0500
Zachary.Needell@gtlaw.com

*Attorneys Pro Bono Publico for Defendants*

**DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(2) AND 12(B)(6)**

## STATEMENT OF ISSUES PRESENTED

Pursuant to Local Rule 7.1(d)(2), the issues presented by this motion are:

**Personal Jurisdiction**

    1.    Should this Court dismiss the First Amended Complaint ("FAC") in its entirety for lack of personal jurisdiction where Plaintiff does not allege that the Defendants are subject to this Court's general personal jurisdiction and where Plaintiff attempts to base specific personal jurisdiction solely on out-of-state expressive conduct that allegedly caused harm in Michigan?

**Defamation Claim**

    2.    Should this Court dismiss Plaintiff's defamation claim because the statements describing Plaintiff's conduct were, at a minimum, substantially true and thus not actionable?

    3.    Should this Court dismiss Plaintiff's defamation claim because the description of a person as "anti-semitic" is a non-actionable statement of subjective opinion?

    4.    Should this Court dismiss Plaintiff's defamation claim because the alleged statements are protected as a fair and true report of a public record—the Police Report describing Plaintiff's vandalism of the Jewish Resource Center?

**False Light Claim**

    5.    Should this Court dismiss Plaintiff's false light claim because the same constitutional defenses and limitations that apply to the defamation claim similarly bar the FAC's ancillary tort claims?

    6.    Should this Court dismiss Plaintiff's false light claim where the FAC fails to allege either the disclosure of private facts or actual malice?

**Tortious Interference Claim**

7.    Should this Court dismiss Plaintiff's tortious interference claim because the same constitutional defenses and limitations that apply to the defamation claim similarly bar the FAC's ancillary tort claims?

8.    Should this Court dismiss Plaintiff's tortious interference claim where the FAC fails to plead any contract or business relationship or expectancy allegedly interfered with by Defendants?

**Intentional Infliction of Emotional Distress Claim**

9.    Should this Court dismiss Plaintiff's intentional infliction of emotional distress claim because the same constitutional defenses and limitations that apply to the defamation claim similarly bar the FAC's ancillary tort claims?

10.    Should this Court dismiss Plaintiff's intentional infliction of emotional distress claim where the FAC challenges only speech on a matter of public concern, which the courts have repeatedly found fails to satisfy the extreme or outrageous conduct necessary to support such a claim?

Defendants answer "yes" to each of these questions.

# CONTROLLING OR MOST APPROPRIATE AUTHORITY

## Rule 12(b)(2) Standard

*Int'l Shoe Co. v. State of Washington*, 326 U.S. 310 (1945)

## Personal Jurisdiction in Internet Speech Cases

*Blessing v. Chandrasekhar*, 988 F.3d 889 (6th Cir. 2021)

## Rule 12(b)(6) Standard

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)

*Bell Atl. Corp. v. Twombly*, 550 U.S. 555 (2007)

## Defamation Claim

As to substantial truth: *Rouch v. Enquirer & News of Battle Creek Mich.*, 487 N.W.2d 205 (Mich. 1992)

As to the Fair Report Privilege: MCL 600.2911(3); *Northland Wheels Roller Skating Ctr., Inc. v. Detroit Free Press, Inc.*, 539 N.W.2d 774 (Mich. Ct. App. 1995); *McCracken v. Evening News Ass'n*, 141 N.W.2d 694 (Mich. Ct. App. 1966)

As to the non-actionability of opinion: *Milkovich v. Lorain Journal Co.*, 497 U.S. 1 (1990); *McCafferty v. Newsweek Media Grp., Ltd.*, 955 F.3d 352 (3d Cir. 2020); *Tannous v. Cabrini Univ., et al.*, 2023 WL 6465842 (E.D. Pa. Oct. 4, 2023)

## False Light Claim

As to the applicability of defamation defenses and limitations: *Dupuis v. City of Hamtramck*, 502 F. Supp. 2d 654 (E.D. Mich. 2007)

As to the requirement of a disclosure of private facts: *Reed v. Ponton*, 166 N.W.2d 629 (Mich. Ct. App. 1968)

As to the actual malice requirement: *Foundation for Behavioral Resources v. W. E. Upjohn Unemployment Trustee Corp.*, 957 N.W.2d 352 (Mich. Ct. App. 2020)

## Tortious Interference Claim

As to the non-actionability of speech on matters of public concern: *Tannous v. Cabrini Univ., et al.*, 2023 WL 6465842 (E.D. Pa. Oct. 4, 2023)

As to pleading of a specific contract or business expectancy interfered with: *Health Call v. Atrium Home & Health Servs., Inc.*, 706 N.W.2d 843 (Mich. Ct. App. 2005)

## Intentional Infliction of Emotional Distress Claim

As to the applicability of defamation defenses and limitations: *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46 (1985)

As to the required outrageous conduct: *Roberts v. Auto Owners Insurance Company*, 374 N.W.2d 905 (Mich. 1985)

# TABLE OF CONTENTS

STATEMENT OF ISSUES PRESENTED.................................................... i

CONTROLLING OR MOST APPROPRIATE AUTHORITY ............................ iii

TABLE OF AUTHORITIES ................................................................ vii

I.    INTRODUCTION .................................................................... 1

II.   STATEMENT OF FACTS ........................................................... 2

      A.    The Parties ................................................................... 2

      B.    Plaintiff Vandalizes Ann Arbor's Jewish Resource Center ................ 3

      C.    StopAntisemitism's Reporting on Plaintiff's Misconduct .................. 3

ARGUMENT ....................................................................................... 4

III.  THE FAC SHOULD BE DISMISSED FOR LACK OF PERSONAL
      JURISDICTION ...................................................................... 4

      A.    Rule 12(b)(2) Standard ...................................................... 4

      B.    The Court Lacks Personal Jurisdiction Over Defendants. .................. 5

            1.    Defendants Are Not Subject to General Jurisdiction..................... 6

            2.    Defendants Are Not Subject to Specific Jurisdiction. .................. 6

IV.   THE TORT CLAIMS ASSERTED IN THE FAC ARE PROHIBITED BY
      THE CONSTITUTION AND OTHERWISE BARRED ........................... 10

      A.    Rule 12(b)(6) Standard ...................................................... 10

      B.    The FAC Fails to State a Claim for Defamation............................. 10

            1.    Substantially True Statements Are Not Actionable. .................... 12

            2.    SA's Statements Are Protected as a Fair Report. ...................... 16

            3.    The "Antisemitic" Statements Are Protected Opinion. ............... 18

      C.    Plaintiff's False Light Claim Must Be Dismissed. ......................... 23

      D.    The FAC Fails to State a Claim for Tortious Interference................. 26

E.      Plaintiff's IIED Claim Must Be Dismissed........................................ 28

CONCLUSION ..................................................................................................... 30

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)...........................................................................................10

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 555 (2007)...........................................................................................10

*Biro v. Condé Nast*,
   807 F.3d 541 (2d Cir. 2015), *cert. denied*, 136 S. Ct. 2015 (2016)...................25

*Blessing v. Chandrasekhar*,
   988 F.3d 889 (6th Cir. 2021) ......................................................................5, 7, 9

*BNSF Ry. v. Tyrell*,
   581 U.S. 402 (2017)..............................................................................................6

*Bridgeport Music, Inc. v. Still N the Water Pub.*,
   327 F.3d 472 (6th Cir. 2003) ................................................................................4

*Burger King Corp. v. Rudzewicz*,
   471 U.S. 462 (1985)..............................................................................................5

*Cetera v. Mileto*,
   995 N.W.2d 838 (Mich. Ct. App. 2022)............................................................24

*Cobb v. Time, Inc.*,
   278 F.3d 629 (6th Cir. 2002) ..............................................................................26

*Coeus Creative Grp., LLC v. Gaffney*,
   2023 WL 5673950 (E.D. Mich. Sept. 1, 2023) ....................................................6

*Collins v. Detroit Free Press, Inc.*,
   627 N.W.2d 5 (Mich. Ct. App. 2001)..................................................................14

*Comic Strip Promotions, Inc. v. Envivo LLC*,
   76 Misc.3d 1229(A) (Sup. Ct. N.Y. Cnty. 2022) ...............................................19

*Cooper v. Templeton*,
   629 F. Supp. 3d 223 (S.D.N.Y. 2022) ...............................................................19

*DMC Plumbing & Remodeling, LLC v. Fox News Network, LLC*,
   2012 WL 5906870 (E.D. Mich. Nov. 26, 2012).......................................... 16-17

*Dupuis v. City of Hamtramck*,
   502 F. Supp. 2d 654 (E.D. Mich. 2007) .............................................................24

*Edwards v. Detroit News, Inc.*,
   910 N.W.2d 394 (Mich. Ct. App. 2017)..............................................................11

*Egiazaryan v. Zalmayev*,
   880 F. Supp. 2d 494 (S.D.N.Y. 2012) ................................................................20

*Endoscopy Corp. of Am. v. Kenaan*,
   2023 WL 2439487 (Mich. Ct. App. Mar. 9, 2023).............................................27

*Fisher v. Detroit Free Press, Inc.*,
   404 N.W.2d 765 (Mich. Ct. App. 1987)..............................................................12

*Found. for Behavioral Resources v. W. E. Upjohn Unemployment
   Trustee Corp.*,
   957 N.W.2d 352 (Mich. Ct. App. 2020)..............................................................25

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
   564 U.S. 915 (2011)...............................................................................................5

*Greenbelt Coop. Publ'g Ass'n v. Bresler*,
   398 U.S. 6 (1970).................................................................................................19

*Harder v. Sunrise Senior Living, Inc.*,
   2009 WL 5171843 (E.D. Mich. Dec. 22, 2009) ....................................10, 18, 21

*Harte-Hanks Commc'ns, Inc v. Connaughton*,
   491 US 657 (1989)...............................................................................................26

*Hayley v. Allstate Ins. Co*,
   686 N.W.2d 273 (Mich. Ct. App. 2004)..............................................................28

*Health Call v. Atrium Home & Health Serv., Inc.*,
   706 N.W.2d 843 (Mich. Ct. App. 2005)..............................................................26

*Hildebrant v. Meredith Corp.*,
    63 F. Supp. 3d 732 (E.D. Mich. 2014) ...............................................................14

*Hustler Magazine, Inc. v. Falwell*,
    485 U.S. 46 (1985).............................................................................................29

*Int'l Shoe Co. v. State of Washington*,
    326 U.S. 310 (1945)...........................................................................................5

*Ireland v. Edwards*,
    584 N.W.2d at 641 .............................................................................................24

*Johnson v. Griffin*,
    85 F.4th 429 (6th Cir. 2023) ......................................................................... 7-8

*Jones v. City of Phila.*,
    73 Pa. D. & C. 4th 246 (Com. Pl. 2005).........................................................21

*Jones v. City of Phila.*,
    893 A.2d 837 (Pa. Comwlth. Ct. 2006) ...........................................................19

*Kelly v. The Daily Beast Company LLC*,
    2022 WL 17546616 (W.D. Mich. Dec. 9, 2022)..............................................30

*Koniak v. Heritage Newspapers, Inc.*,
    499 N.W.2d 346 (Mich. App. 1993)......................................................... 15-16

*Lak, Inc. v. Deer Creek Enters.*,
    885 F.2d 1293 (6th Cir. 1989) ...........................................................................7

*Lemelson v. Bloomberg L.P.*,
    903 F.3d 19 (1st Cir. 2018)...............................................................................25

*Literati, LLC v. Literati, Inc.*,
    2021 WL 1122209 (E.D. Mich. Mar. 24, 2021).......................................... 27-28

*Lyndecon, LLC v. First Acadiana Fin. Servs., LLC*,
    2002 WL 373116 (E.D. Mich. Feb. 28, 2002)...................................................6

*Masson v. New Yorker Magazine, Inc.*,
    501 U.S. 496 (1991)...........................................................................................12

*Mayfield v. NASCAR*,
   674 F.3d 369 (4th Cir. 2012) ................................................................25

*McCafferty v. Newsweek Media Grp., Ltd.*,
   955 F.3d 352 (3d Cir. 2020) ................................................................19

*McCracken v. Evening News Ass'n*,
   141 N.W.2d 694 (Mich. Ct. App. 1966)................................................17

*McDonald v. Wise*,
   769 F.3d 1202 (10th Cir. 2014) ...........................................................25

*McKee v. General Motors LLC*,
   376 F. Supp. 3d 751 (E.D. Mich. 2019) ...............................................10

*Michel v. NYP Holdings, Inc.*,
   816 F.3d 686 (11th Cir. 2016) .............................................................25

*Milkovich v. Lorain Journal Co.*,
   497 U.S. 1 (1990).............................................................................18, 19

*Miller v. AXA Winterthur Ins. Co.*,
   694 F.3d 675 (6th Cir. 2012) .................................................................5

*Morgan v. NYP Holdings, Inc.*,
   58 Misc. 32 1203(A) (N.Y. Sup. Ct. 2017) ..........................................20

*Nat'l Ass'n of Gov't Employees v. BUCI Television, Inc.*,
   118 F. Supp. 2d 126 (D. Mass. 2000)...................................................20

*New York Times v. Sullivan*,
   376 U.S. 254 (1964)..............................................................................12

*Nichols v. Moore*,
   396 F. Supp. 2d 783 (E.D. Mich. 2005), *aff'd* 477 F.3d 396 (6th
   Cir. 2007) ........................................................................................ 17-18

*Northland Wheels Roller Skating Ctr., Inc. v. Detroit Free Press, Inc.*,
   539 N.W.2d 774 (Mich. Ct. App. 1995).................................................16

*Philadelphia Newspapers, Inc. v. Hepps*,
   475 U.S. 767 (1986)..............................................................................11

*Pippen v. NBCUniversal Media, LLC*,
  734 F.3d 610 (7th Cir. 2013) ................................................................25

*Puetz v. Spectrum Health Hosps*,
  919 N.W.2d 439 (Mich. Ct. App. 2018)................................................23

*Reed v. Ponton*,
  166 N.W.2d 629 (Mich. Ct. App. 1968)................................................24

*Roberts v. Auto Owners Insurance Company*,
  374 N.W.2d 905 (Mich. 1985)...............................................................29

*Rouch v. Enquirer & News of Battle Creek Mich.*,
  487 N.W.2d 205 (Mich. 1992)...............................................................12

*Russell v. Davies*,
  97 A.D.3d 649 (2d Dep't 2012)..............................................................20

*Rybas v. Wapner*,
  311 Pa. Super. 50 (1993) .......................................................................23

*Smith v. Sch. Dist. of Phila.*,
  112 F. Supp. 2d 417 (E.D. Pa. 2000).....................................................22

*Snyder v. Phelps*,
  562 U.S. 443 (2011).............................................................................2, 29

*St. Amant v. Thompson*,
  390 U.S. 727 (1968)................................................................................12

*Standing Comm. on Discipline v. Yagman*,
  55 F.3d 1430 (9th Cir. 1995) .................................................................20

*Swierkiewicz v. Sorema N.A.*,
  534 U.S. 506 (2002).................................................................................2

*Tannous v. Cabrini Univ., et al.*,
  2023 WL 6465842 (E.D. Pa. Oct. 4, 2023) ...................................*passim*

*Varlesi v. Wayne St. Univ.*,
  909 F. Supp. 2d 827 (E.D. Mich. 2012) .................................................28

*Walden v. Fiore*,
571 U.S. 277 (2014)........................................................................................5, 7

**STATUTES**

18 U.S.C. § 247 ...............................................................................................15

MCL 600.2911 ...........................................................................................14, 16

**OTHER AUTHORITIES**

Fed. R. Civ. P. 12(b)(2)......................................................................................4

Fed. R. Civ. P. 12(b)(6)................................................................................3, 10

## I.   **INTRODUCTION**

This case tests a core feature of our democracy: the ability to participate in debate on a public issue without fear of punishment under state tort law. It arises out of a controversial and widely publicized incident in which Plaintiff John Druskinis, a University of Michigan student, spray-painted graffiti at the entrance to the Jewish Resource Center in Ann Arbor. To stifle protected speech on a matter of legitimate public concern, Plaintiff seeks to impose liability on Defendants for calling out his conduct. The First Amendment prohibits him from doing so.

Rather than respond to Defendants' Motion to Dismiss (ECF No. 13), Plaintiff filed a First Amended Complaint (ECF No. 19) ("FAC"). The FAC, however, is plagued by the same deficiencies as its predecessor. Nothing has changed.

*First*, this Court lacks personal jurisdiction over Defendants. Defendants do not have any relationship with Michigan and did not direct any action at Michigan. The Constitution's Due Process Clause does not permit this Court to exercise personal jurisdiction over Defendants based on the FAC's alleged tort claims. Any holding to the contrary would improperly transmute Plaintiff's contacts with Michigan into Defendants' contacts with Michigan.

*Second*, all of the FAC's claims run afoul of the First Amendment. The factual statements challenged by Plaintiff are substantially true, an absolute defense for defamation (Count I), and their description of Plaintiff's public conduct as

"antisemitic" is nonactionable opinion.[1] Plaintiff's tag-along tort claims—false light invasion of privacy (Count II), tortious interference with business relations (Count III), and intentional infliction of emotional distress (Count IV)—cannot be used to plead around the First Amendment and thus fail for the same reasons.

The FAC's potpourri of tort claims collides with the central principle that "speech on public issues occupies the highest rung of the hierarchy of First Amendment values, and is entitled to special protection." *Snyder v. Phelps*, 562 U.S. 443, 452 (2011). This is not the first time that a plaintiff has misused the law of defamation to claim damage to reputation by scapegoating a reporting organization for the consequences of his own egregious misconduct—here, a public display of graphic anti-Jewish bigotry that led to his dismissal from the University of Michigan's hockey team. But the statements challenged by Plaintiff are constitutionally protected expression. The FAC should be dismissed, with prejudice.

## II.   **STATEMENT OF FACTS**[2]

### A. **The Parties**

Plaintiff John Druskinis is a resident of Michigan. (ECF No. 19, PgID.246 ¶ 2.) He is a student at the University of Michigan and a former member of the school's

---

[1] For the convenience of the Court, a chart delineating the overlapping constitutional defenses requiring dismissal of the FAC is attached hereto as Exhibit 1.

[2] Defendants cite the FAC's allegations, which are accepted as true only for purposes of the instant motion. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 n.1 (2002).

ice hockey team. (*Id*., PgID.247 ¶ 10.)

Defendant StopAntisemitism ("SA") is an unincorporated association with its principal place of business in Florida. (*Id*., PgID.246 ¶ 5.) SA is a "grassroots watchdog organization" dedicated to "expos[ing] groups and individuals" that "engage in antisemitic behaviors." (*Id*., PgID.247-248 ¶ 11.) Defendant Liora Reznichenko is a resident of Florida. (*Id*., PgID.246 ¶ 4.)

### B. **Plaintiff Vandalizes Ann Arbor's Jewish Resource Center**

On August 22, 2023, Plaintiff spray-painted graffiti on the sidewalk entrance to the Jewish Resource Center in Ann Arbor. (*Id*., PgID.248 ¶ 13.) As stated in the Ann Arbor Police Department's investigative report and reflected in the photographs attached thereto[3], "[t]he graffiti in question was of an ejaculating male genitalia, and the words 'fag' and 'Jew.'"[4] (Exhibit 2, p. 5.)

### C. **StopAntisemitism's Reporting on Plaintiff's Misconduct**

On September 30, 2023, SA posted the following on X.com:

University of Michigan hockey has given Johnny Druskinis the boot after he was caught on camera spray painting swastikas onto the Jewish Resource Center during welcome week.

Thank you @umichhockey for creating actual consequences for

---

[3] The Police Report, which the Court may consider pursuant to Fed. R. Civ. P. 12(b)(6), is attached as Exhibit 2.

[4] There is ambiguity as to the second word. Elsewhere, the Police Report describes the second word as possibly Greek letters; later, the other student stated that she "spray painted her initials on the sidewalk."  (Ex. 2, p. 11.)

antisemitism activity on your campus. #twitterhockey

(ECF No. 19, PgID.248-249 ¶ 16.)

SA published an article on its website on October 2, 2023, stating that Plaintiff had been suspended from the University of Michigan's hockey team for "graffitiing antisemitic . . . messages on the sidewalk in front of the campus' Jewish Resource Center." (*Id.* ¶¶ 17-18.) The article quoted Ms. Reznichenko's observation that "Antisemitism is prevalent on college campuses across the US, and the University of Michigan has a responsibility to either suspend or even expel this student if they are truly serious about fighting bigotry." (*Id.*, PgID.249 ¶ 19.) It also noted that Plaintiff's misconduct was the "second reported act of antisemitism at the University of Michigan in the last few months." (*Id.*, PgID.250 ¶ 22.)

In addition, SA featured a third-party article on its website of an "Antisemitic Incident Map" that included a red marker on Michigan with the headline "Michigan hockey player kicked off team after alleged antisemitic behavior." (*Id.*, ¶ 23.)

## ARGUMENT

## III. THE FAC SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION

### A. Rule 12(b)(2) Standard

On a motion to dismiss pursuant to Rule 12(b)(2), Plaintiff bears the burden of establishing personal jurisdiction over the defendant. *See Bridgeport Music, Inc. v. Still N the Water Pub.*, 327 F.3d 472, 478 (6th Cir. 2003). Plaintiff may not stand

on his pleading, but must make a prima facie showing with specific facts demonstrating that the Court has jurisdiction. *See Miller v. AXA Winterthur Ins. Co.*, 694 F.3d 675, 678 (6th Cir. 2012).

The Due Process Clause "constrains a State's authority to bind a nonresident defendant to a judgment of its courts." *Walden v. Fiore*, 571 U.S. 277, 283 (2014). Due process requires that the defendant have "minimum contacts" with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. State of Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). "The 'minimum contacts' analysis depends on the defendant's contact with the forum, 'not the defendant's contacts with persons who reside there.'" *Blessing v. Chandrasekhar*, 988 F.3d 889, 901 (6th Cir. 2021) (quoting *Walden*, 571 U.S. 271). The critical question "is whether 'the defendant's conduct and connection with the forum state are such that [s]he should reasonably anticipate being haled into court there.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

### B. The Court Lacks Personal Jurisdiction Over Defendants.

Without personal jurisdiction, the Court may not address Plaintiff's claims. There are two types of personal jurisdiction: general and specific. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). Defendants are

subject to neither general nor specific jurisdiction.

      1.  <u>Defendants Are Not Subject to General Jurisdiction.</u>

Plaintiff does not and cannot allege facts supporting general jurisdiction. General jurisdiction requires Defendants to have "continuous and systematic" ties that render them "at home" in Michigan. *Id*. SA, an un-incorporated organization, was not formed in Michigan and never consented to Michigan's jurisdiction. The FAC nowhere alleges that SA conducts business—continuous, systematic, or otherwise—in Michigan.[5] *See Lyndecon, LLC v. First Acadiana Fin. Servs., LLC*, 2002 WL 373116, at *1 (E.D. Mich. Feb. 28, 2002) (identifying general jurisdiction standard for unincorporated organizations). Reznichenko, an individual, (1) was not served in Michigan; (2) is domiciled in Florida, not Michigan; and (3) never consented to Michigan's jurisdiction. *See Coeus Creative Grp., LLC v. Gaffney*, 2023 WL 5673950, at *7 (E.D. Mich. Sept. 1, 2023) (identifying general jurisdiction standard for individuals). Thus, the Court lacks general jurisdiction over Defendants.

      2.  <u>Defendants Are Not Subject to Specific Jurisdiction.</u>

Specific jurisdiction requires the Defendants' suit-related conduct to create "a

---

[5] The standard to satisfy the "continuous and systematic" prong is exceedingly high and clearly inapplicable to SA, which is not alleged to conduct any business in Michigan. *See BNSF Ry. v. Tyrell*, 581 U.S. 402, 413 (2017) (holding Montana lacked general personal jurisdiction over a railroad company that had 2,000 miles of railroad track and over 2,000 employees in Montana).

substantial connection" with Michigan. *Walden*, 571 U.S. at 284. The *sine qua non* for specific jurisdiction is whether Defendants established minimum contacts with Michigan by purposefully availing themselves of the benefits and protections of its laws. *Lak, Inc. v. Deer Creek Enters.*, 885 F.2d 1293, 1300 (6th Cir. 1989). Defendants' contacts must be with Michigan itself, not with persons—such as Plaintiff—who reside there. *Walden*, 571 U.S. at 284-85; *Blessing*, 988 F.3d at 904.

Allegedly tortious internet communications, without more, do not confer personal jurisdiction wherever they can be read or wherever the subjects of the posts reside. *Blessing*, 988 F.3d at 905 n.15. Rather, the communication must be "specifically directed at the forum," rendering it "the focal point" of the communication. *Id.* at 905-06. None of Defendants' communications or statements satisfy this standard.

Two recent Sixth Circuit cases addressed to these issues are instructive. In *Blessing v. Chandrasekhar*, the defendant posted comments on Twitter concerning an incident in Washington, D.C. involving Kentucky students, and urged her followers to "[s]hame" the students and contact their Kentucky-based school. The Sixth Circuit concluded that the defendant's Twitter posts did not subject her to personal jurisdiction in Kentucky because she never took any "affirmative steps" to communicate with individuals in Kentucky. 988 F.3d at 906. In *Johnson v. Griffin*, the defendant posted comments on Twitter concerning an incident in Tennessee

7

involving the plaintiff, urged her followers to make the plaintiff "internet famous," and "tagged" and "threatened" the plaintiff's Tennessee-based employer, urging that he be fired and removed from the board. 85 F.4th 429 (6th Cir. 2023). The court held that the defendant's Twitter posts subjected her to jurisdiction in Tennessee because she "directly communicated" with the plaintiff's employer by "tagging" it in her posts, she "drew on a Tennessee source," and the posts resulted in "real world consequences" for both the plaintiff and the employer in Tennessee. *Id.* at 433-34.

None of the grounds for finding personal jurisdiction in *Johnson* are present here. First, and most significantly, Defendants did not "directly communicate" with any Michigan residents. Rather, Defendants' communications here—the X.com Post, the Article, the Map, or other statements allegedly made by Ms. Reznichenko (collectively, the "Communications")—were disseminated to a general audience. Plaintiff's conclusory allegation that Defendants "directed a specific call to action to University of Michigan leadership" (ECF No. 19, PgID.249 ¶ 20) is belied by the communications themselves (*id.*, PgID.255-256 ¶ 48). Defendants did not tag or otherwise communicate directly with any University of Michigan decisionmakers.

Second, Defendants' Communications did not include any demands, "intentional threats," or promise "harassment." *Johnson*, 85 F.4th at 434. Rather, the Communications recounted events occurring weeks before, and offered opinions regarding what further action the University of Michigan might consider under the

8

circumstances. The University of Michigan neither suspended nor expelled Plaintiff. Accordingly, any Communications concerning further action that could be taken by the University of Michigan are not "suit-related," and thus are insufficient to confer personal jurisdiction in Michigan.

Third, Plaintiff does not allege that Defendants "drew on a [Michigan] source" for their alleged comments. *Johnson*, 85 F.4th at 434. Rather, Plaintiff alleges that "it was Defendants alone who invented his association with antisemitism . . . out of whole cloth." (ECF No. 19, PgID. 255 ¶ 46.)

Like in *Blessing*, missing here are allegations that Defendants intentionally targeted the forum state and directly communicated with any forum resident. Defendants' Communications reflect "passive" internet activity that does not give rise to personal jurisdiction. *Johnson*, 85 F.4th at 438 (J. Cole, concurring).

In addition to the Communications, Plaintiff now alleges that "[u]pon information and belief, [SA] and Reznichenko also prepared and distributed a press release to numerous outlets regarding Druskinis, including to media outlets in Michigan." (ECF No. 19, PgID.250 ¶ 24.) Plaintiff provides no explanation of the press release's contents other than that it is "regarding" Plaintiff in some way. (*Id.*) Plaintiff fails even to allege how the press release, to whatever extent it exists, damaged him. If the allegations nowhere state what alleged defamatory statements exists in the hypothetical press release, they are certainly insufficient to confer

personal jurisdiction. The Court should dismiss for lack of jurisdiction.

## IV. THE TORT CLAIMS ASSERTED IN THE FAC ARE PROHIBITED BY THE CONSTITUTION AND OTHERWISE BARRED

### A. Rule 12(b)(6) Standard

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 555, 570 (2007)); *see also Harder v. Sunrise Senior Living, Inc.*, 2009 WL 5171843 (E.D. Mich. Dec. 22, 2009) (granting defendant's motion for judgment on the pleadings as to defamation claim). A complaint must contain more than "labels or conclusions" or "a formulaic recitation of the elements of a cause of action," *Twombly*, 550 U.S. at 570, and does not "suffice if it tenders 'naked assertions' devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678. Finally, "[i]f 'a cause of action fails as a matter of law, regardless of whether the plaintiff's allegations are true,' then the Court must dismiss." *McKee v. General Motors LLC*, 376 F. Supp. 3d 751, 755 (E.D. Mich. 2019) (quoting *Winnett v. Caterpillar, Inc.*, 553 F.3d 1000, 1005 (6th Cir. 2009)).

### B. The FAC Fails to State a Claim for Defamation.

To state a claim for defamation, a plaintiff must allege facts establishing:

(1) a false and defamatory statement concerning the plaintiff, (2) an unprivileged communication to a third party, (3) fault amounting at least to negligence on the part of the publisher, and (4) either

10

> actionability of the statement irrespective of special harm (defamation
> per se) or the existence of special harm caused by publication.

*Edwards v. Detroit News, Inc.*, 910 N.W.2d 394, 400 (Mich. Ct. App. 2017) (citation omitted).

Where statements involve a matter of public concern, the plaintiff's burden of proving falsity is a constitutional requirement. *See Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 776-77 (1986). The speech at issue here undoubtedly relates to matters of public concern as it involves reporting on the criminal investigation of an act of vandalism at a Jewish community center. *Tannous v. Cabrini Univ., et al.*, 2023 WL 6465842, at *10-11 (E.D. Pa. Oct. 4, 2023) (holding that "publicly disseminated antisemitism" "is part of a broader, societal trend of hate and violence toward Jewish people" and therefore "of general interest to the Jewish community and the wider public").

Plaintiff identifies seven allegedly defamatory statements, all of which accuse Plaintiff of antisemitism because he defaced the sidewalk outside the Jewish Resource Center. Only one of the alleged defamatory statements identifies Plaintiff's graffiti as a swastika; the rest characterize Plaintiff and his actions as antisemitic. (ECF No. 19, PgID.255-256 ¶¶ 48(a)–(f); *see also* Ex. 2.) The FAC's defamation claim must be dismissed for three reasons: (1) substantial truth is an absolute defense; (2) the statements are protected under Michigan's statutory "fair report"

privilege; and (3) opinions and hyperbole are not actionable as a matter of law.[6]

       1.  <u>Substantially True Statements Are Not Actionable.</u>

A plaintiff has a defamation claim only as to statements that are materially false. *Rouch v. Enquirer & News of Battle Creek Mich.*, 487 N.W.2d 205, 214 (Mich. 1992). The courts do not hold the media to a standard of literal and absolute accuracy in every detail. *Id.* Instead, if the "gist" or "sting" of the article is true, the plaintiff cannot prevail. *Fisher v. Detroit Free Press, Inc.*, 404 N.W.2d 765, 767-68 (Mich. Ct. App. 1987); *see also Masson v. New Yorker Magazine, Inc.,* 501 U.S. 496, 517 (1991) ("Minor inaccuracies do not amount to falsity so long as the substance, the gist, the sting, of the libelous charge be justified. . . . Put another way, the statement is not considered false unless it would have a different effect on the mind of the reader from that which the pleaded truth would have produced.") (citations omitted). The substantial truth doctrine bars Plaintiff's claims here. The FAC does not, and cannot, allege facts to establish that the statements at issue are materially false.

---

[6] As a limited purpose public figure, Plaintiff must clear an additional constitutional hurdle. Under the First Amendment, a public figure cannot prevail on a claim for defamation unless he or she can prove that the defendant published the statement at issue with "actual malice," defined to mean "knowledge that [the statement] was false or with reckless disregard of whether it was false or not." *New York Times v. Sullivan*, 376 U.S. 254, 279-80 (1964). "Recklessness" in this context does not mean extreme negligence, but rather that "the defendant in fact entertained serious doubts as to the truth of" the statement at issue at the time of its publication. *See St. Amant v. Thompson*, 390 U.S. 727, 731 (1968). As set forth below, the FAC fails to allege specific facts demonstrating publication with actual malice.

The Communications reported Plaintiff's widely publicized defacing of the Jewish Resource Center during a season of religious observance. Plaintiff spray-painted the word "fag" and an image of ejaculating genitalia on the Center's sidewalk, causing the Ann Arbor Police Department to "ensure extra patrols" for the "upcoming Jewish Holidays." (Ex. 2, p. 6.)

Contrary to the FAC's allegations, the Communications are substantially true. They accurately state that the University of Michigan dismissed Plaintiff from the hockey team after he was caught on camera vandalizing the Jewish Resource Center's sidewalk during welcome week and "this time of heightened sensitivity regarding antisemitism." (ECF No. 19, PgID.254-255 ¶ 45.) Plaintiff does not dispute these statements, but argues the Communications are defamatory because they describe the graffiti as a swastika. Given the conceded facts that Plaintiff spray-painted a homophobic slur and an image of ejaculating genitalia at the entrance to a building where Judaism's traditions are celebrated, Defendants' Communications are protected by Michigan's long-standing substantial truth doctrine.

The Communications do not paint a "very different picture" from the true facts. Further, the minor discrepancy alleged by Plaintiff does not negate the truthfulness of every other statement. The gist of the story is that Plaintiff spray-painted hateful graffiti on the Jewish Resource Center's sidewalk, which led to his dismissal from the University's hockey team. The Communications accurately

13

convey the gist of Plaintiff's conduct. *Collins v. Detroit Free Press, Inc.*, 627 N.W.2d 5, 10 (Mich. Ct. App. 2001) (holding that article quoting plaintiff as having said "I hate the race" was substantially accurate although plaintiff had actually said "I don't like the race").

These fundamental free speech principles are dispositive here. Whether Plaintiff spray-painted swastikas or a homophobic slur accompanied by the image of ejaculating genitalia, the literal truth is that he defaced the entrance to the Jewish Resource Center with derogatory graffiti. Under the First Amendment, SA's reporting on Plaintiff's hateful message does not demand a lexicographer's precision, because the pleaded truth would not have affected the reader's mind. *See Collins*, 627 N.W.2d at 10 (2001) ("for purposes of establishing a prima facie case of defamation, a statement is not considered false unless it would have a different effect on the mind of the reader from that which the pleaded truth would have produced") (citations omitted).

In the FAC, Plaintiff alleges that Defendants committed defamation *per se* by purportedly imputing the commission of a criminal offense. (ECF No. 19, PgID.259 ¶¶ 60-61.) Importantly, branding the claims as defamation *per se* only affects damages, it does not change the substantial truth analysis. *See* MCL 600.2911. Substantial truth remains "an absolute defense to a defamation claim." *Hildebrant v. Meredith Corp.*, 63 F. Supp. 3d 732, 738 (E.D. Mich. 2014).

14

Even if the allegations are taken as allegations of material falsity, the defamation *per se* claim still fails. Plaintiff alleges Defendants accuse him of a "hate crime" or of "ethnic intimidation," but no such accusations are evident in the Communications. In any event, even if the statements amounted to such an accusation, they remain substantially true: Plaintiff's conduct, both as described by Defendants and as described by Plaintiff, could constitute criminal activity. The Church Arson Prevention Act, 18 U.S.C. § 247, outlaws "intentionally defac[ing], damag[ing], or destroy[ing] any religious real property." 18 U.S.C. § 247. "Religious real property" is defined as "any church, synagogue, mosque, religious cemetery, or other religious real property, including fixtures or religious objects contained within a place of religious worship." *Id.*

Here, the Jewish Resource Center clearly qualifies as "religious real property."[7] There is no question that Plaintiff's intentional defacement of the Jewish Resource Center's property *could* be prosecuted as a violation of the Act—although, again, the Communications say no such thing. Accordingly, Plaintiff's admission that he defaced the Jewish Resource Center renders the (unstated) accusation that he committed a hate crime or equally egregious act substantially true. *See Koniak v.*

---

[7] The mission of the Jewish Resource Center "is to provide an outlet for students looking to stay involved or be more involved in Judaism." https://www.michiganjrc.com/#mission, Jewish Resource Center Website (last visited April 22, 2024).

15

*Heritage Newspapers, Inc.*, 499 N.W.2d 346, 348 (Mich. App. 1993) ("Although the popular sense of a legal term may not be technically accurate . . . if technical and common parlance yield different interpretations of the same word, the constitutionally required breathing space affords protection of the writer's choice.").

It makes no difference whether Plaintiff spray-painted a swastika or a homophobic slur with ejaculating genitalia on a place of worship—both constitute a hate crime, and the gist of the Communications is true. Of all the places Plaintiff could have spray-painted this horrific content, he intentionally chose a Jewish religious center. Michigan's long-standing substantial truth doctrine requires dismissal of the FAC.

### 2. SA's Statements Are Protected as a Fair Report.

The Communications are also protected by Michigan's statutory "fair report" privilege. MCL 600.2911(3), provides, in relevant part: "Damages shall not be awarded in a libel action for the publication . . . of a fair and true report of matters of public record . . . or record generally available to the public. . . ." "[U]nder the plain language of § 2911(3), the privilege encompasses newspaper articles based upon police reports of criminal incidents." *Northland Wheels Roller Skating Ctr., Inc. v. Detroit Free Press, Inc.*, 539 N.W.2d 774, 779 (Mich. Ct. App. 1995). To determine whether a report is immune under the statute, "the Court must determine [i]f the gist of [the] article is substantially accurate. . . ." *DMC Plumbing &*

*Remodeling, LLC v. Fox News Network, LLC*, 2012 WL 5906870, at *3-5 (E.D. Mich. Nov. 26, 2012) (internal quotations and citation omitted). In other words, the Court conducts the same substantial truth analysis as in Section IV.B(1) above.

Here, the statutory privilege applies. The statements accurately describe the Police Report, attached as Exhibit 2. In relevant part, the Police Report states:

- "I received information from DC Maguire regarding possible ***Anti-Semitic Graffiti*** at the Jewish Resource Center at this location." (Ex. 1, p. 5 (emphasis supplied).)

- "The graffiti in question was of an ejaculating male genitalia, and ***the words 'fag' and 'Jew'.'''*** (*Id.*; *see also id.* (emphasis supplied) ("[Witness] stated that there was a graphic penis and the word 'fag' spraypainted on the walkway when you come up to the front door.").)

The purportedly actionable statements accurately reflect the "gist" or "sting" of the Police Report. As such, they are statutorily privileged.

In an obvious attempt to plead around the fair report privilege, Plaintiff alleges that, "[o]n information and belief, at the time Defendants published their Defamatory Publications, they did not have access to the police report about the incident." (ECF No. 19, PageID.258, ¶ 56.) But this allegation does not impact application of the privilege: "The statute ***does not*** command the reporter to obtain his information from the official court records." *McCracken v. Evening News Ass'n*, 141 N.W.2d 694, 697 (Mich. Ct. App. 1966) (emphasis supplied); *see also Nichols v. Moore*, 396 F. Supp. 2d 783, 789 (E.D. Mich. 2005) ("The Court further notes that ***Defendant is not***

17

***required to consult the public record before making his statements***, it is sufficient

that the public record is consistent with them." (emphasis supplied)), *aff'd* 477 F.3d

396 (6th Cir. 2007).

Plaintiff's allegation that Defendants "did not have access to the police

report," even taken as true, cannot alter the analysis as a matter of law. The question

before the Court is only whether the Communications are a "fair and true report" of

the Police Report. The Communications accurately reflect the "gist" of the Police

Report, and the statutory privilege thus bars Plaintiff's defamation claim.

### 3.   The "Antisemitic" Statements Are Protected Opinion.

Five of the allegedly defamatory statements observe that Plaintiff engaged in

antisemitic conduct when he spray-painted graffiti outside a Jewish religious and

cultural center on the eve of the Jewish holiday season. (ECF No. 19, PgID.255-256

¶ 48(a)-(d), (f).) These statements are nonactionable expressions of opinion.

This Court has recognized that "[a] defamation claim cannot be brought based

upon statements that do not state actual, objectively verifiable ***facts*** about a

plaintiff." *Harder*, 2009 WL 5171843, at *5 (E.D. Mich. 2009) (emphasis supplied).

In other words, "a statement of opinion relating to matters of public concern which

does not contain a provably false factual connotation will receive full constitutional

protection." *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990). This is

consistent with the protections afforded expressions of opinion by the First

Amendment. *See Greenbelt Coop. Publ'g Ass'n v. Bresler*, 398 U.S. 6 (1970); *Milkovich*, 497 U.S. at 20. "That holds true even when an opinion is extremely derogatory, like calling another person's statements anti-Semitic." *McCafferty v. Newsweek Media Grp., Ltd.*, 955 F.3d 352, 357 (3d Cir. 2020).

Plaintiff may believe his conduct—spray-painting graffiti at a Jewish religious and cultural center—is not antisemitic. But the law does not permit him to use this Court to penalize those who believe otherwise and condemn such conduct as bigotry. To the contrary, the law unquestionably protects SA's right to call out Plaintiff for his deplorable conduct in defacing the Jewish Resource Center in Ann Arbor, because for purposes of defamation law "numerous cases have held that interpretations of statements as racist or antisemitic are non-actionable opinion." *Comic Strip Promotions, Inc. v. Envivo LLC*, 76 Misc.3d 1229(A), at *3 (Sup. Ct. N.Y. Cnty. 2022) (collecting cases); *see also Jones v. City of Phila.*, 893 A.2d 837, 844 (Pa. Comwlth. Ct. 2006) ("accusations of anti-Semitism" are non-actionable as "a protected fundamental right to express views about the character of other people"). Indeed, "[i]t is well established that an accusation of bigotry is a protected statement of opinion, rather than a defamatory statement of fact capable of being proven true or false." *Cooper v. Templeton*, 629 F. Supp. 3d 223, 235 (S.D.N.Y.

2022). Countless jurisdictions agree.[8]

The recent decision in *Tannous v. Cabrini Univ., supra*, a case with closely analogous facts, is instructive in its application of these principles. The plaintiff in *Tannous*, a university professor, sued SA for publishing "an article titled 'Kareeem Tannous – Professor of Hate,' that labeled Professor Tannous 'antisemite of the week.'" 2023 WL 6465842, at *2. The article stated, "'Tannous spreads conspiracy theories of Jewish control, refers to the Jewish people and nation as Nazis, incites violence, and calls [for] the eradication of Israel.'" *Id*. Further, the article encouraged readers to email the President of the university where the plaintiff was employed to "'express concern about Professor Kareem Tannous' ongoing antisemitism[.]'" *Id*. After the University terminated Tannous' employment, he sued SA for defamation.

---

[8] *See, e.g., Standing Comm. on Discipline v. Yagman*, 55 F.3d 1430, 1438-39 (9th Cir. 1995) (epithets accusing judge of "anti-[S]emitism" held to be protected opinion); *Nat'l Ass'n of Gov't Employees v. BUCI Television, Inc.*, 118 F. Supp. 2d 126, 131 (D. Mass. 2000) (charge of antisemitism held to be nonactionable opinion based on disclosed facts); *Egiazaryan v. Zalmayev*, 880 F. Supp. 2d 494, 507 (S.D.N.Y. 2012) (holding nonactionable opinion statements referring to plaintiff as antisemitic and noting that "the reasonable reader would understand any implication that [the plaintiff] himself is anti-Semitic and/or anti-American to be the opinion of a person 'voicing no more than a highly partisan point of view'"); *Russell v. Davies*, 97 A.D.3d 649, 659 (2d Dep't 2012) (article accusing plaintiff of being antisemitic is non-actionable opinion); *Morgan v. NYP Holdings, Inc.*, 58 Misc. 32 1203(A) (N.Y. Sup. Ct. 2017) (dismissing a defamation claim over an article that described plaintiff as acting "like a Nazi" and holding that "any implication that plaintiff is anti-Semitic constitutes a non-actionable opinion").

The federal district court had little difficulty dismissing the claim, recognizing that SA's speech was protected by the First Amendment:

> [S]tatements throughout [the article], characterizing Tannous as "antisemite of the week," "Professor of Hate," "hateful," and "bigoted," may be hyperbolic and offensive but are not actionable. Because the article is mere opinion, Tannous' defamation claim is non-cognizable.

*Id*. at *9 (citations omitted).

So too here, where "classifying the term anti-Semitic as defamatory would restrict too severely the right to express such opinions, no matter how annoying or disagreeable, and would be [a] dangerous curtailment of a First Amendment Right." *Jones v. City of Phila.*, 73 Pa. D. & C. 4th 246, 259 (Com. Pl. 2005) (internal quotation marks and citations omitted). Like SA's commentary in *Tannous*, the statements challenged by the Complaint are "protected by the First Amendment and [are] non-defamatory." 2023 WL 6565842, at *9 (footnote omitted).

Plaintiff's allegations that Defendants accused him of antisemitism cannot be the predicate for a defamation claim because they involve the expression of a protected opinion. (ECF No. 19, PgID.255-256 ¶ 48(a)-(d), (f).) Whether someone harbors prejudicial animosity against members of a particular religious denomination "is not susceptible to being provable as false and therefore cannot form the basis for a defamation action." *Harder*, 2009 WL 5171843, at *5. The Court should dismiss this lawsuit as to these statements for failure to state a plausible claim.

21

*Smith v. Sch. Dist. of Phila.*, 112 F. Supp. 2d 417, 429 (E.D. Pa. 2000) ("While the Court acknowledges that a statement that plaintiff is 'racist and anti-Semitic,' if it was made, would be unflattering, annoying and embarrassing, such a statement does not rise to the level of defamation as a matter of law because it is merely non-fact based rhetoric.").

Plaintiff's further claim that he was defamed by Defendants' call for his removal from the University of Michigan (ECF No. 19, PgID.256 ¶ 48(e)) fares no better. Defendants are permitted under the First Amendment to express the viewpoint that a student's acknowledged misconduct merits stronger punishment from a state-sponsored educational institution than the termination of his status as a scholarship athlete. This debate belongs to the marketplace of ideas; the nation's courts do not act to adjudicate such questions. Considered in context, these statements (*Id.*, PgID.249-250 ¶¶ 19, 25) express strong criticism of the University's response as reflecting an inadequate commitment to combating religious intolerance exhibited by a student it was responsible for educating. Given the egregious nature of Plaintiff's public misconduct, in calling for a stronger sanction in the form of suspension or expulsion Defendants were clearly communicating both condemnation of Plaintiff's vandalism of the Jewish Resource Center and disagreement with the school's response thereto. Thus, the reasonable reader of the allegedly defamatory statements would therefore recognize that they represented an

exhortation in favor of imposing a harsher penalty—removal of Plaintiff from the University's student body, whether temporary or permanent—expressed as part of an ongoing public controversy and designed primarily to persuade. This is the essence of opinion, which Plaintiff may not stifle through the instant litigation, no matter how offensive or disagreeable he finds the statements at issue. *See Rybas v. Wapner*, 311 Pa. Super. 50, 55 (1993) ("Individuals should be able to express their views about the prejudices of others without the chilling effect of a possible lawsuit in defamation resulting from their words.").

### C. Plaintiff's False Light Claim Must Be Dismissed.

In Michigan, the common law tort of invasion-of-privacy consists of four branches, including as relevant here "publicity that places the plaintiff in a false light in the public eye." *Puetz v. Spectrum Health Hosps*, 919 N.W.2d 439, 448 (Mich. Ct. App. 2018). "In order to maintain an action for false-light invasion of privacy, a plaintiff must show that the defendant broadcast to the public in general, or to a large number of people, information that was unreasonable and highly objectionable by attributing to the plaintiff characteristics, conduct, or beliefs that were false and placed the plaintiff in a false position." *Id.* Moreover, "the defendant must have known of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the plaintiff would be placed." *Id.* Plaintiff's false light claim fails for several reasons.

First, the Michigan Court of Appeals has long recognized that a plaintiff may not simply relabel a defamation claim as one for false light: "It is clear that these [First Amendment] limitations are not exclusive to defamation claims. We conclude that these limitations apply to all of Plaintiffs' claims in this case [including false light]." *Ireland v. Edwards*, 584 N.W.2d at 641 (affirming summary disposition of false light claim); *see also Dupuis v. City of Hamtramck*, 502 F. Supp. 2d 654, 659 (E.D. Mich. 2007) (dismissing false light claim "for same reasons that invalidate[d] [plaintiff's] defamation claim—namely that the defendants' story is not false . . ."). Because the statements alleged are substantially true and protected opinion, the statements cannot as a matter of law support a false light claim.

Second, while the overlap between the defamation and invasion of privacy tort merits dismissal of both claims, the distinct elements of the latter tort separately justify dismissal. A false light claim requires that the "publicity must lift the ***curtain of privacy*** on a subject matter that a reasonable man of ordinary sensibilities would find offensive and objectionable: supersensitiveness is not protected." *Reed v. Ponton*, 166 N.W.2d 629, 630 (Mich. Ct. App. 1968); *see also Cetera v. Mileto*, 995 N.W.2d 838, 456-59 (Mich. Ct. App. 2022) (dismissing false light claim because the speech at issue related to public, not private lives of plaintiffs). This reasoning mandates dismissal of the false light claim. The statements made about Plaintiff involved his public conduct, not his private affairs. And the publication of a

24

complaint to law enforcement officials regarding the defacement of a Jewish cultural center is clearly a public, not a private matter. The FAC's false light claim is therefore not actionable as a matter of law.

Third, the false light claim fails for yet another reason: Plaintiff does not adequately plead actual malice. "[M]alice is an element of false-light invasion of privacy, regardless of whether the plaintiff is a public or private figure." *Found. for Behavioral Resources v. W. E. Upjohn Unemployment Trustee Corp.*, 957 N.W.2d 352, 357 (Mich. Ct. App. 2020) (citing *Puetz*, *supra*). In other words, every false light plaintiff must "establish that when the defendant disseminated the information, it was done with actual knowledge or reckless disregard of the truth or falsity of the publicized matter." *Id.* (quoting *Puetz*, *supra*) (internal quotations omitted).

Here, Plaintiff's three attempts to plead malice fail:

- Plaintiff recites the bare-bones elements of malice without support (*see* FAC, ECF No. 19, PgID.261-262, ¶ 74). The naked recitation of malice as an element of the tort does not satisfy the *Iqbal/Twombly* standard. *See Lemelson v. Bloomberg L.P.*, 903 F.3d 19, 24 (1st Cir. 2018).[9]

- Plaintiff elsewhere attempts to use purported personal animus to establish malice. (*Id.*, PgID.261-262 ¶¶ 74, 76 (alleging "subjective ill will" and referring to Defendants having taken credit for

---

[9] Numerous circuits agree. *Biro v. Condé Nast*, 807 F.3d 541, 544-45 (2d Cir. 2015), *cert. denied*, 136 S. Ct. 2015 (2016); *Mayfield v. NASCAR*, 674 F.3d 369, 378 (4th Cir. 2012); *Pippen v. NBCUniversal Media, LLC*, 734 F.3d 610, 614 (7th Cir. 2013); *McDonald v. Wise*, 769 F.3d 1202, 1219-20 (10th Cir. 2014); *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 702 (11th Cir. 2016).

"exposing" Plaintiff as evidence of malice).) Allegations of ill will or dislike are irrelevant to the Court's determination of actual malice. "The actual malice standard does not refer to a showing of ill will or malice in the ordinary sense." *Cobb v. Time, Inc.*, 278 F.3d 629, 637 (6th Cir. 2002).

- Plaintiff claims Defendants "failed to perform even the rudimentary diligence into the accuracy of their 'swasikas' statements . . . ." (*Id.*, PageID.262 ¶ 75.) But "failure to investigate before publishing, even when a reasonably prudent person would have done so, is not sufficient to establish reckless disregard." *Harte-Hanks Commc'ns, Inc v. Connaughton*, 491 US 657, 688 (1989).

As a matter of law, Plaintiff does not adequately plead malice, independently justifying dismissal of his false light claim.

### D. **The FAC Fails to State a Claim for Tortious Interference.**

Count III alleges tortious interference with business relations. (ECF No. 19, PgID.262-265 ¶¶ 79-93.) The elements of tortious interference with business relations are (1) a valid business relationship or expectancy; (2) the defendant's knowledge of the relationship or expectancy; (3) the defendant's intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resulting damage to the plaintiff. *Health Call v. Atrium Home & Health Serv., Inc.*, 706 N.W.2d 843, 848-49 (Mich. Ct. App. 2005). Plaintiff alleges that Defendants are generally aware that college athletes sometimes transfer to play at other universities and that because of Defendants' alleged acts, Plaintiff lost "a prospective offer to join a hockey team at a different university[.]" (*See id.*

¶¶ 44, 81, 84, 88.) These allegations are inadequate to plead tortious interference.[10]

Michigan law requires that Plaintiff plead the existence of a specific business relationship or expectancy. Plaintiff's allegation that an unidentified university rescinded a transfer offer does not satisfy this standard. *See, e.g.*, *Endoscopy Corp. of Am. v. Kenaan*, 2023 WL 2439487, at *4 (Mich. Ct. App. Mar. 9, 2023) (dismissing claims when the plaintiff failed to identify the specific relationship or expectancy that defendant allegedly interfered with); *Literati, LLC v. Literati, Inc.*, 2021 WL 1122209, at *3 (E.D. Mich. Mar. 24, 2021) (dismissing claim when the plaintiff merely alleged that "upon information and belief," the defendant's intellectual property confused non-specific and anonymous potential customers).

Similarly, Plaintiff's allegation that Defendants generally know that college athletes sometimes transfer is insufficient to satisfy the knowledge element of tortious interference. College athletes sometimes transfer schools, just like the average adult sometimes transfers jobs and just like businesses sometimes transfer service providers or product suppliers. If Plaintiff's pleading is sufficient, than the knowledge requirement under Michigan law is meaningless. It is not. *See, e.g.*, *Literati*, 2021 WL 1122209, at *3 (dismissing tortious interference claim that failed

---

[10] Further, the First Amendment precludes Plaintiff from holding Defendants liable under any speech-based tortious interference theory arising from their substantially true statements and opinions. *See, e.g.*, *Tannous*, 2023 WL 6465842, at *9–10.

to identify specific business relationship because, without identify a specific business relationship, the plaintiff cannot "support the allegation that defendant had knowledge of specific relationships as required to state a tortious interference claim"); *Varlesi v. Wayne St. Univ.*, 909 F. Supp. 2d 827, 850 (E.D. Mich. 2012) (finding the plaintiff's tortious interference claim failed because she could not establish the defendant "knew of any particular business expectancy").

The only other allegation Plaintiff includes is his reference to being dismissed as a volunteer coach by a youth hockey program. (ECF No. 19 ¶¶ 45, 89.) This allegation, however, also cannot satisfy the elements of tortious interference with business relations for two reasons. As above, Plaintiff neither sufficiently identifies the youth hockey program nor pleads Defendants' knowledge of Plaintiff's volunteer participation with it. Additionally, it is unclear how a *volunteer—i.e.*, unpaid— position could ever supply the underlying *business* relationship given that Plaintiff is unable to allege any pecuniary loss.

### E. Plaintiff's IIED Claim Must Be Dismissed.

Intentional infliction of emotional distress requires "(1) extreme and outrageous conduct, (2) intent or recklessness, (3) causation, and (4) severe emotional distress." *Hayley v. Allstate Ins. Co*, 686 N.W.2d 273, 277 (Mich. Ct. App. 2004). *Id*. Plaintiff's claim fails for three independently sufficient reasons.

First, Michigan's Supreme Court has made it clear that this tort is reserved for

extreme and shocking situations. The tort requires "conduct that has been so outrageous in character and so extreme in degree as to be beyond all possible bounds of decency and to be regarded *as atrocious and utterly intolerable* in a civilized society." *Roberts v. Auto Owners Insurance Company*, 374 N.W.2d 905, 908-09 (Mich. 1985) (emphasis added). Even accepting its allegations as true, the FAC fails to describe how the Communications were extreme and outrageous in character. Plaintiff's claim does not remotely approach the aberrant behavior necessary to satisfy this requirement. The publications at issue here reported on a matter of public concern. *Tannous*, 2023 WL 6465842, at *10-11. Discussion of such matters is what civilized societies engage in, not what they punish.

Second, the U.S. Supreme Court has made clear that "outrageousness," the standard applicable to a claim for intentional infliction of emotional distress, is too vague to be applied to speech on matters of public interest. *See Snyder*, 562 U.S. 443 (2011). There, the Court held that "outrageousness . . . is a highly malleable standard with 'an inherent subjectiveness about it which would allow a jury to impose liability on the basis of the jurors' tastes or views, or perhaps on the basis of their dislike of a particular expression." *Id.* at 459. Plaintiff's IIED claim seeks to penalize SA's speech on the basis of an impermissibly subjective standard.

Finally, Plaintiff may not use this disfavored tort to circumvent the defenses to his failed defamation claim. *See Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46

29

(1985) (IIED claim governed by First Amendment libel law actual malice requirement); *see also Kelly v. The Daily Beast Company LLC*, 2022 WL 17546616 (W.D. Mich. Dec. 9, 2022) (dismissing IIED claim with defective defamation claim and for the same reasons). The FAC fails to state a claim for IIED.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss Plaintiff's First Amended Complaint with prejudice.

Dated: April 22, 2024                    Respectfully submitted,

By: /s/ Andrew M. Pauwels
Andrew M. Pauwels (P79167)
Jalen R. Farmer (P86859)
Honigman LLP
2290 First National Building
660 Woodward Avenue
Detroit, MI 48226-3506
(313) 465-7290
apauwels@honigman.com
jfarmer@honigman.com

Michael J. Grygiel
Greenberg Traurig, LLP
54 State Street, 6th Floor
Albany, NY 12207
(518) 689-1400
grygielm@gtlaw.com


*Attorneys Pro Bono Publico for Defendants*

Scott J. Bornstein
Greenberg Traurig, LLP
One Vanderbilt Avenue
New York, NY 10017
(212) 801-9200
scott.bornstein@gtlaw.com

Bradford D. Kaufman
Greenberg Traurig, P.A.
777 South Flagler Drive
Suite 300 East
West Palm Beach, FL 33401
(561) 650-7900
kaufmanb@gtlaw.com

Zachary Needell
Greenberg Traurig, P.A.
401 East Las Olas Boulevard
Suite 2000
Fort Lauderdale, FL 33301
(954) 765-0500
Zachary.Needell@gtlaw.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 22, 2024, I electronically filed the foregoing pleading using the CM/ECF system which will send notice of electronic filing to all counsel of record.

/s/ *Andrew M. Pauwels*
Andrew M. Pauwels

Dated:  April 22, 2024

55730437.3